FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 29, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLIE M., | No. 2:22-CV-00015-JAG |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 15. Attorney D. James Tree represents Charlie M. (Plaintiff); Special Assistant United States Attorney Sarah Moum represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2) as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline. *See* ECF No. 17. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## I.    JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on January 15, 2014, alleging amended onset of disability since June 1, 2012.[1]  Tr. 152-53, 316-24, 1382, 1322, 1355.  The applications were denied initially and upon reconsideration.  Tr. 212-15, 218-21.  An Administrative Law Judge held a hearing on August 20, 2015, Tr. 60-123, and issued an unfavorable decision on November 9, 2015.  Tr. 34-59.  Plaintiff requested review by the Appeals Council, and on December 5, 2016, the Appeals Council denied the request for review, but admitted several new records.  Tr. 1-6.  Plaintiff filed an action in the U.S. District Court for the Western District of Washington on February 3, 2017, and in an order dated December 5, 2017, U.S. District Judge John C. Coughenour remanded the case for further administrative proceedings for the ALJ to reevaluate Fibromyalgia and Chronic Fatigue Syndrome under step two in light of the new evidence.  Tr. 793-99.  On March 8, 2018, the Appeals Council vacated the 2015 decision and remanded the case to an ALJ for further proceedings consistent with the order of the court.  Tr. 802.

On October 1, 2019, Plaintiff appeared before another ALJ, who issued an unfavorable decision on October 15, 2019.  Tr. 1378-08.  Plaintiff filed for review of the case by this Court on January 22, 2020.  *See* Tr. 1415.  In an order dated November 18, 2020, Magistrate Judge John T. Rodgers remanded the case for further administrative proceedings to reevaluate Plaintiff's subjective complaints

---

[1] Plaintiff filed a prior application for benefits on March 7, 2013, which was denied at the initial level and not appealed.  *See* Tr. 208-22, 1322.  In the November 2021 decision, the ALJ declined to reopen the 2013 application, noting the period under consideration in the present case began the day after the denial on the prior claim.  Tr. 1322.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

and the medical opinion evidence, and to make new findings on each of the five steps in the sequential process, taking into consideration any other evidence or testimony relevant to Plaintiff's claim.  Tr. 1414-31.  On January 19, 2021, the Appeals Council vacated the final decision of the commissioner and remanded the case to an ALJ for further proceedings consistent with the order of the court.  Tr. 1434-45.  The Appeals Council noted Plaintiff had filed a subsequent Title II and Title XVI claim for benefits in December 2019 and explained that the district court remand rendered the subsequent (2019) claims duplicate; the Appeals Council therefore ordered the ALJ to consolidate the claims, associate the evidence from both case files, and issue a new decision on the consolidated claims.  Tr. 1434-45; *see also* Tr. 1438-54. 1462.  The Appeals Council ordered the ALJ to apply the prior rules for evaluating medical evidence to the consolidated cases.[2]  Tr. 1434.

On October 26, 2021, Plaintiff appeared before ALJ Jesse K. Shumway, Tr. 1352-77, who issued an unfavorable decision on the associated claims on November 8, 2021.  Tr. 1319-51.  The Appeals Council did not assume jurisdiction of the case, making the ALJ's October 2021 decision the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on January 28, 2022. ECF No. 1.

---

[2] For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  For claims filed before March 27, 2017, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

## II.    STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## III.    SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability.

*Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show: (1) the claimant can make an adjustment to other work and (2) the claimant can perform other work that exists in significant numbers in the national economy.  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## IV.    ADMINISTRATIVE FINDINGS

On November 8, 2021, the ALJ issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act.  Tr. 1319-51.

At **step one**, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and that he had not engaged in substantial gainful activity (SGA) since the amended alleged onset date, June 1, 2012.  Tr. 1325.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, ADD, depressive disorder, anxiety disorder, and a personality disorder.  *Id*.

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id*.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform light work, with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine tasks, following short, simple instructions; he can have only superficial contact with the public, supervisors, and coworkers, with no collaborative tasks; and he needs

a routine, predictable work environment with no more than occasional
changes and simple decision-making.

Tr. 1327.

At **step four**, the ALJ found Plaintiff was able perform past relevant work as
a slot cashier. Tr. 1336.

At **step five**, the ALJ also found that, based on the testimony of the
vocational expert and considering Plaintiff's age, education, work experience and
residual functional capacity, Plaintiff was also able to make a successful
adjustment to other work that existed in significant numbers in the national
economy, including the representative occupations of marker, assembler (small
products), and cafeteria attendant. Tr. 1336-37.

The ALJ thus concluded Plaintiff was not under a disability within the
meaning of the Social Security Act at any time from the alleged onset date through
the date of the decision. Tr. 1338.

## V.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying
him disability insurance benefits under Title II and Title XVI of the Social Security
Act. The question presented is whether substantial evidence supports the ALJ's
decision denying benefits and, if so, whether that decision is based on proper legal
standards.

Plaintiff raises the following issues for review: (1) whether the ALJ properly
evaluated Plaintiff's subjective complaints; and (2) whether the ALJ properly
evaluated the medical opinion evidence. ECF No. 13 at 2.

## VI.   DISCUSSION

### A.   <u>Subjective Complaints.</u>

Plaintiff contends the ALJ erred by not properly assessing Plaintiff's
symptom complaints. ECF No. 13 at 3-11.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).

General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Additionally, the law of the case doctrine applies in the Social Security context.  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).  Under the law of the case doctrine, a court is precluded from revisiting issues which have been decided—either explicitly or implicitly—in a previous decision of the same court or a higher court.  *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir.

2012).  The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567.  The Court finds the law of the case doctrine applies for some, but not all, of the ALJs findings, as discussed *infra*.

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. 1328.  Plaintiff argues the ALJ failed to provide specific, clear and convincing reason to not fully credit Plaintiff's allegations, and that this Court addressed many of these issues in the 2020 remand order.  ECF No. 13 at 4, 8.  Defendant argues the ALJ reasonably evaluated the reliability of Plaintiff's subjective complaints, providing numerous valid reasons to discount Plaintiff's symptom complaints.  ECF No. 15 at 2-9.

## 1.  *Inconsistent Statements.*

The ALJ found Plaintiff's allegations were inconsistent with reports to providers.  Tr. 1329.  An ALJ may consider inconsistent statements by a claimant in assessing his subjective statements.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Here, the ALJ noted Plaintiff's testimony in 2015, 2019, and 2021 that he suffered from disabling fatigue and widespread pain, and that since 2010 his pain and fatigue had progressively worsened.  Tr. 1327-28.  The ALJ noted in 2021 Plaintiff testified that he slept 12 hours a night but was still tired during the day and that he had mental health issues including depression.  *Id*.  The ALJ noted at

the 2019 hearing Plaintiff testified prior attempts at psychiatric medication had resulted in intolerable side effects, and that in 2021 Plaintiff testified he had tried eight to 10 psychiatric medications but had experienced severe side effects with each one.  *Id*.  The ALJ also found Plaintiff's allegations that he had progressively worsened since 2013 were inconsistent with his reports to providers of improvement in symptoms.  Tr. 1329.

Plaintiff contends this issue was partly addressed by the prior remand order, because this Court previously found Plaintiff was reporting only minimal improvement, which was never substantial during the period at issue, and that the ALJ's conclusions ignored the cycles of his disorders and minimal nature of his improvement.  ECF No. 13 at 5; *see* Tr. 1425.  Defendant contends Plaintiff alleged disability in part due to depression in his claim, and the ALJ reasonably found his reports to providers concerning his symptoms, treatment, and adverse effects from medication have been inconsistent.  ECF No. 15 at 6-7.  The Court agrees that the issue of improvement in physical symptoms has already been considered by this Court, especially as relates to symptoms such as fatigue related to Plaintiff's diagnoses of chronic fatigue and fibromyalgia, ECF No. 13 at 5; *see* Tr. 1425, and therefore declines to further address this issue here under law of the case doctrine, as discussed further *infra*.

As for Plaintiff's inconsistent statements concerning medication, however, the Court agrees with Defendant that the ALJ reasonably addressed this issue in the current decision.  The ALJ recognized Plaintiff had previously alleged adverse side effects from medications, but also explained, for example, that Plaintiff was further questioned about this at the 2021 hearing and could not identify any specific medications that caused him side effects, aside from pain medication.  Tr. 1331; *see* Tr. 1365.  The ALJ cited to evidence received after the prior remand order or not discussed in the remand order, Tr. 1329, and despite reports that Plaintiff could

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

1
2
3
4
5
6

not take any medication without intolerable side effects,[3] review of records shows he took Ritalin and Ambien, for example, throughout 2015 and 2016 without report of any side effects.  Tr. 1329; *see, e.g.*, Tr. 1028-29, 1042, 1048, 1051, 1056, 1058, 1104.  At the 2021 hearing, Plaintiff reported he had recently stopped taking a medication prescribed by his rheumatologist for fibromyalgia, noting it "didn't do anything" and "I figured I'd just end up getting side effects."  Tr. 1361.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Notably, in December 2019, Plaintiff reported to psychiatrist, Rod Peterson, M.D., that his "[f]irst treatment for depression was just within the last month and [that he] has never been on medications"; Dr. Peterson noted Plaintiff "report[ed] both mother and brother were made worse by antidepressants" but that Plaintiff reported at that time he "has never taken antidepressants."  Tr. 1762.  This is inconsistent with Plaintiff's numerous reports to providers throughout the period at issue that he would not try any antidepressant, because he had been treated with these medications in the past and experienced intolerable side effects, despite recommendations from multiple providers that such medication would likely help with his mood and his fibromyalgia.  *See, e.g.*, Tr. 775, 1089-90, 1092, 1094-97. While it is reasonable for Plaintiff to not take medication that causes intolerable side effects, in 2021 he reported to a psychiatrist that he had *never* used these medications, and such inconsistency is a reasonable factor for an ALJ to discuss in evaluating the reliability of a claimant's allegations.

22
23
24
25
26

The record further supports the ALJ's finding of inconsistent statements throughout the period at issue.  For example, in 2020 Plaintiff told rheumatologist Dr. Byrd that he had had fibromyalgia since he was 15 but has "never really been on any therapy for that but unable to work since 2010," which is inconsistent with

27
28

[3] The 2013 Third Party Function Report from Plaintiff's mother also indicated he was allergic to all prescription medicine.  Tr. 1010-21.

records showing treatment with providers including Dr. Teitelbaum along with various naturopathic providers; in 2015, treating provider Dr. Lien also noted while Plaintiff showed "no overt signs that I am able to observe, I also do not have much to provide him for his chronic fatigue, fibromyalgia . . . [and] he has seen multiple providers including rheumatology and neurology, GI in the past" for his symptoms. Tr. 2024, 1015; *see, e.g.*, Tr. 687-94. At a behavioral health/psychiatric consultation in April 2017, Plaintiff also reported he spent several years following Dr. Teitelbaum's unique protocol for treating chronic fatigue and fibromyalgia. Tr. 1092.

Further, at the 2019 hearing Plaintiff testified he was not doing any kind of physical therapy or doctor recommended exercise program but "I would if they recommended it"; he told the ALJ at that time his providers told him not to exercise "because it just makes everything worse," but he also testified "I think they were saying to start like trying to walk more like around the house and everything." Tr. 768, 772. In contrast, February 2015 records from treating provider Dr. Lien show he instructed Plaintiff at that time to slowly increase exercise daily "enough to get you outside and moving." Tr. 1012. Dr. Lien noted in July 2015 Plaintiff "now will work on up-titrating exercise program." Tr. 1031. In July 2016 treating provider Suzanne Hirst, PA-C, also instructed Plaintiff to "try to start the graded exercise therapy, if even just 2 minutes a day . . . increase exercise as tolerated." Tr. 1066. In August 2016, Ms. Hirst indicated he should "keep working on lifestyle change, which includes exercise and a healthy diet," and she noted "we discussed the importance of other treatment of chronic fatigue including adequate diet, exercise, treatment of anhedonia." Tr. 1070.

In January 2017, Ms. Hirst "encouraged self-care, graded exercise therapy, tracking it on a calendar" in relation to chronic fatigue; and she noted, however, that Plaintiff did "not track his exercises like we've discussed in the past."

Tr. 1083.  In March 2017, Ms. Hirst noted she continued to encourage exercise and good diet for chronic fatigue syndrome, and was still recommending "exercise therapy and tracking it;" and later in March 2017 she reported they had a "long and frank discussion about his s[yptoms] today . . . how emotional and psychological stress can manifest as physical s[ymptoms] . . . will continue to encourage him to seek psychological help, pursue [cognitive behavioral therapy], attempt graded exercise therapy which he continues to decline."  Tr. 1086, 1089.  At a behavioral health/psychiatric consultation in April 2017, Plaintiff also reported he spent several years following Dr. Teitelbaum's protocol for treating chronic fatigue syndrome and fibromyalgia, including exercise, and the 2017 provider also "encouraged therapy as well as healthy living strategies including exercise and diet" for his impairments.  Tr. 1092, 1094.

On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with reports to providers during the period at issue.  This finding is supported by substantial evidence and is a clear and convincing reason to discount Plaintiff's symptom claims.

## 2.  *Secondary Gain.*

The ALJ also found the record demonstrated a secondary-gain motivation, which called into question Plaintiff's subjective reports to providers.  Tr. 1329. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence.  *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).  The ALJ pointed to Plaintiff's reports, such as that he started counseling because DSHS told him he needed mental health treatment to continue receiving benefits through Washington State, his psychiatrist's report that Plaintiff's "goal is to get on disability," along with Plaintiff's statement that it was "so much easier for his mom to get on disability" for the same medical issues. Tr. 1330 (citing Tr. 1742, 1762-63, 1767).  The ALJ also noted in June 2020

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

Plaintiff reported the main purpose of his visit at that time was "to reestablish care for disability purposes." Tr. 1330 (citing Tr. 1867). The ALJ also noted in August 2020 Plaintiff reported his mood was stable with no irritability or anxiety, but that he would continue services until DSHS told him it was no longer necessary. Tr. 1330 (citing Tr. 1962). The ALJ also noted that in October 2020, Plaintiff's therapist asked if Plaintiff had considered taking online courses in a subject that would allow him to work from home and he reported, "[n]o. I can't think of anything I'm interested in." Tr. 1330 (citing Tr. 1968). Records from January 2020, however, show Plaintiff reported his future goal was "I want to get into commercial real estate. Invest in apartments, that sort of thing. That's one of my plans for when I get the back pay for my disability." Tr. 1769. His therapist noted Plaintiff's report, "there is no plan B. If the disability doesn't come through, I'm basically screwed." *Id*.

Evidence of secondary gain motivation was a reasonable factor for the ALJ to discuss in evaluating the reliability of a claimant's allegations.

### 3. *Inconsistent with Objective Findings.*

The ALJ determined Plaintiff's allegations were inconsistent with objective findings. Tr 1328. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

Plaintiff contends the prior remand order of this Court held that the consideration of objective findings was erroneous, and that the present ALJ's conclusions violate the law of the case. ECF No. 13 at 4-5. Defendant contends that while this Court raised concerns about the prior ALJ's reliance on strength and neurologic findings in its remand order, it did not hold the consideration of any objective findings at all would be an error; and that in the current decision the ALJ reasonably addressed different objective findings specifically related to Plaintiff's complaints of fatigue of pain. ECF No. 15 at 4-5 (citing Tr. 1426). The Court agrees.

This Court previously explained that while an ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptoms statements, this cannot be the only reason provided by the ALJ. Tr. 1426, citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence). This Court found that because none of the other reasons provided by the former ALJ to discount Plaintiff's symptom claims in the 2019 decision were supported by substantial evidence, the lack of supportive objective findings alone was insufficient to meet the clear and convincing standard. Tr. 1426. This Court did "take note that fibromyalgia and chronic fatigue syndrome are not conditions that generally present with extensive objective findings." Tr. 1426, quoting *Revels v. Berryhill*, 874 F.3d 648, 656-57; *see generally* SSR 12-2p, SSR 14-1p. This Court found it was "not clear whether the normal or unremarkable exam findings identified by the [previous] ALJ, such as intact strength and no neurological deficits, have any bearing on the existence or severity of Plaintiff's conditions, and the [previous] ALJ cited to no medical source that indicated as much." Tr. 1426.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

In the present case, however, the ALJ found the RFC was supported by "the largely unremarkable objective findings in the record," and he also explained that "as the District Court pointed out, chronic fatigue syndrome and fibromyalgia do not lend themselves to many objective findings." Tr. 1328. The ALJ concluded that, while not determinative, "patterns in constitutional findings like appearance, distress, and the like are certainly helpful in assessing global complaints like the claimant's complaints of fatigue and whole body pain." *Id*. The ALJ found that in this case Plaintiff has "consistently been observed with no constitutional signs," and noted records showed him observed by providers to be, for example, appearing well, in no acute distress,[4] alert and pleasant, ambulating without difficulty,

---

[4] As noted recently in this District, however, "district courts have questioned the applicability of the generic chart note of 'acute distress' to chronic conditions such as Plaintiff's." *See Maria D. v. Saul*, No: 1:20-CV-03076-FVS 2021 WL 1132224 at *6 (E.D. Wash. Feb. 5, 2021) (citing *Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. April 21, 2020)); *Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec*., No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute."). All records indicate Plaintiff's chronic fatigue and fibromyalgia are chronic conditions; the ALJ provided numerous other reasons here but uses this rationale throughout the decision and is cautioned against relying on clinical findings of "no acute distress" or similar upon remand.

cooperative, not appearing malnourished or extremely deconditioned, healthy appearing, having good range of motion, normal gait, and with no sensory or motor deficits.  Tr. 1328.  The ALJ also noted labs were consistently unremarkable and x-rays of his SI joints in June 2020 were normal.  Tr. 1329.

The ALJ acknowledged a person with fibromyalgia or chronic fatigue syndrome may have normal examination findings, but reasonably found Plaintiff's allegations inconsistent with the medical evidence, including new evidence and observations and findings of providers upon physical or mental status exam. Tr. 1328-29.  It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews*, 53 F.3d at 1039.  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.  The Court must also consider the ALJ's decision in the context of the "record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

On this record, the ALJ reasonably concluded largely unremarkable findings throughout an extensive multi-year medical record did not support Plaintiff's symptom claims.  While a lack of supportive objective findings alone is insufficient to meet the clear and convincing standard, and the ALJ acknowledged some of the impairments Plaintiff alleges do not lend themselves to many objective findings, here the current ALJ also provided other clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptoms claims.  This finding is supported by substantial evidence and, along with the reasons discussed *supra*, was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 4. *Course of Treatment.*

The ALJ found that Plaintiff's course of treatment was inconsistent with his allegations of disability. Tr. 1330. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Fair*, 885 F.2d at 603.

Plaintiff contends, among other things, that this Court addressed this issue in the 2020 remand order. ECF No. 13 at 8. In the 2020 remand order, however, this Court found the course of treatment Plaintiff pursued, such as nontraditional treatments with Dr. Teitelbaum, did not detract from his allegations of disabling impairments because Plaintiff had some barriers to treatment and reported intolerable side effects from mental health medications; and this Court also found it was reasonable that Plaintiff only pursued physical treatment because he had previously been told he was not experiencing a psychological disorder apart from his difficulty dealing with his physical problems, and thus believed pursuing only physical treatments would address his mental health. Tr. 1423-24.

Defendant contends that that the current ALJ reasonably discounted Plaintiff's reports he had adverse effects from psychiatric medication, because this was inconsistent with his reports to providers, discussed *supra*, including recent reports that he had never taken antidepressants. ECF No. 15 at 6-7; *see* Tr. 1762. The Court agrees and declines to apply the law of the case doctrine in relation to plaintiff's course of treatment, particularly mental health treatment, as the evidence on remand is substantially different, including new evidence and statements from Plaintiff's 2019 application for benefits, which were not available on prior district court review.

While Plaintiff provided some explanation for why he had not sought mental health treatment, records also indicate multiple providers have recommended

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17

mental health counseling and/or antidepressant medication over the many years at issue in this case. *See, e.g.*, Tr. 1086, 1089. 1092, 1094. Where the ALJ's interpretation of the record is reasonable, as it is in the current decision in relation to Plaintiff's course of mental health treatment, it should not be second-guessed. *Rollins*, 261 F.3d at 857. On this record, the ALJ reasonably found that Plaintiff's course of treatment, specifically that he sought only limited mental health treatment despite recommendations, was inconsistent with his allegations of disability. This was a clear and convincing reason supported by substantial evidence to discredit his symptom testimony.

### 5.   *Past Ability to Work and Improvement.*

The ALJ also discounted Plaintiff's reports because he "has had fibromyalgia his entire adult life, yet he was able to sustain substantial gainful activity in the past"; and because the "the record does not just show improvement, it shows improvement to such a point that the [Plaintiff] clearly was not disabled." Tr. 1329. As discussed *supra*, in the 2020 order remanding this case, this Court found that the record did not support a finding that Plaintiff's impairments substantially improved. Tr. 1424-25. Defendant does not defend the current ALJ's use of the same reasoning here. *See* ECF No. 15 at 2-8.

Additionally, in the 2020 order remanding the case, this Court found that while an ALJ may rely on evidence that a claimant's condition "has remained constant for a number of years" and "has not prevented [the claimant] from working that time," in this case the record did not support the ALJ's conclusion that these factors undermined Plaintiff's allegations of disability. Tr. 1421, quoting *Gregory v. Bowen*, 844 F.3d 664, 666-67 (9th Cir. 1988). This Court found that Plaintiff stopped working prior to his alleged onset date, his work and reasons for stopping were remote in time to the relevant period in this claim, and Plaintiff reported his conditions had worsened. Tr. 1421. The Court finds that the

current ALJ also erred in discounting Plaintiff's symptom reports because he had the ability to work in the distant past. Again, Defendant does not defend the current ALJ's use of the same reasoning. *See* ECF No. 15 at 2-8.

These issues were both decided in the prior remand order, and, unlike Plaintiff's course of treatment or the objective evidence, as discussed *supra*, there is not new evidence or other reason to revisit the issue of Plaintiff's past ability to work or improvement in symptoms; the Court therefore finds that the ALJ violated the law of the case by continuing to use this reasoning to discount Plaintiff's symptom claims despite this Court's Remand Order finding such reasons insufficient.

As this case is remanded due to the ALJ's failure to follow the Court's remand order in relation to the medical opinion evidence and violation of rule of mandate, discussed *infra*, the Court declines to conduct a harmless error analysis here.

As the ALJ otherwise provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective complaints, Plaintiff is not entitled to remand on these grounds.

**B.**     **Medical Opinions.**

Plaintiff alleges the ALJ erred by not properly assessing the medical opinions. ECF No. 13 at 11-27. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations

ORDER GRANTING PLAINTIFF'S MOTION . . . - 19

give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is "supported by other evidence in the record and [is] consistent with it." *Andrews*, 53 F.3d at 1041. An ALJ may reject the opinion of a non-acceptable or other medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

Plaintiff contends the ALJ erred by giving less weight to the opinions of treating or examining providers Dr. Lien, Dr. Teitelbaum, Dr. Byrd, Dr. Peterson, Dr. Cole, Dr. Mitchell, and Dr. Genthe; and another source, Dr. Coffin, a naturopath, in favor of opinions that were already the subject of this Court's remand due to failure to consider his primary impairments, a therapist who only discussed Plaintiff's mental impairments, and nonexamining state agency doctors who reviewed only a portion of the recent record. ECF No. 13 at 11-27. Defendant contends the ALJ reasonably evaluated the conflicting medical opinion evidence, and properly gave greater weight to Plaintiff's treating counselor and the state agency consultants. ECF No. 15 at 9-19.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1.    ***Rule of Mandate.***

The rule of mandate is similar to, but broader than, the law of the case doctrine.  The rule provides that any "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Stacy*, 825 F.3d at 567-68.  Plaintiff argues the current ALJ deviated from the remand order because he used the same language and reasoning as the prior ALJ in assessing the medical opinions from the prior ALJ's decision. ECF No. 13 at 12, 16, 18.  The Court agrees.  This Court previously remanded the case, ordering the ALJ to "reassess the medical opinions in light of the longitudinal record and updated treatment notes." *Id*.  This Court "t[ook] note that the [prior] ALJ afforded the most weight to opinions that were provided in 2013 and 2014, prior to much of Plaintiff's treatment," and that these opinions "did not find fibromyalgia and chronic fatigue to be severe impairments and assessed no physical limitations," and that that it was "therefore unclear how those opinions support[ed] the ALJ's findings."  Tr. 1428.

While the Court finds the ALJ remained free to interpret the prior medical opinions based on the longitudinal record, including updated records, review of the decisions shows the ALJ simply copied the prior ALJ's analysis, including reasoning found legally insufficient by this Court; the ALJ added one or two more reasons to discount some of the opinions, but provided minimal, if any, analysis for these new reasons, as described *infra*.  As the ALJ disregarded much of this Court's 2020 Order, the Court finds the ALJ failed to reassess the medical opinions in light of the longitudinal record and updated treatment notes.  The ALJ failed to execute this Court's Remand Order and violated the rule of mandate.  This is reversible error, and the case is remanded to properly reassess all medical opinion evidence.  As discussed further *infra*, the ALJ failed to provide legally sufficient

reasoning to support much of his reasoning in terms of the new opinion evidence, as well.

### 2. *Dr. Lien.*

In February 2016, Plaintiff's treating provider, Casey Lien, M.D., completed a Medical Source Statement Form on Plaintiff's behalf and rendered an opinion on his level of functioning. Tr. 716-24. Dr. Lien reported Plaintiff had chronic fatigue syndrome and fibromyalgia, and that his prognosis was poor. Tr. 716. He indicated Plaintiff did not have the stamina to work an easy job eight hours a day five days a week; he explained "since I have known [Plaintiff] he has not had ability to easily complete all ADLs without worsening symptoms." Tr. 722. Dr. Lien indicated Plaintiff was incapable of even low stress work, his impairments would produce good and bad days, and if he attempted to work full time he would likely be absent more than four days a month as a result of his impairments or treatment. Tr. 723. He indicated Plaintiff had marked limits in his ability to perform ADLs and in his ability to maintain social functioning, and extreme limitation in his ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Tr. 724. The ALJ gave Dr. Lien's opinion minimal weight. Tr. 1331. Because Dr. Lien's opinion was contradicted by Dr. Harmon's 2020 opinion, the ALJ was required to provide specific and legitimate reasons for rejecting it. *Bayliss*, 427 F.3d at 1216.

Plaintiff contends the ALJ's assessment is almost a direct copy of the prior ALJ's decision, except "to add greater weight was given to other sources." ECF No. 13 at 12-13; *compare* Tr. 739-40, 1331-32, in violation of the Remand Order. The Court agrees. The ALJ's reasons to discount Dr. Lien's opinion include reasoning directly from the prior ALJ's decision, including that Plaintiff showed improvement and had multiple periods of gainful employment in the past, reasons that were found insufficient by this Court. Tr. 1331. As discussed above and

*infra*, the discussion of Dr. Lien's opinion was not the only place the ALJ erred in this manner.

The ALJ also provided two new reasons to reject Dr. Lien's 2016 opinion: the 2020 DDS opinions were entitled to greater weight, and "some providers have refused to endorse disability for [Plaintiff]." Tr. 1331-32. In 2020 state agency medical consultant Christin Harmon, M.D., reviewed Plaintiff's file and provided an opinion on his level of functioning. Tr. 1447-49. Dr. Harmon opined plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, stand and walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. In July 2020 state agency mental consultant Vincent Gollogly, Ph.D., reviewed Plaintiff's file and provided an opinion on his level of functioning. Tr. 1449-51. Dr. Gollogly opined Plaintiff retained the ability to understand short and simple instructions given in a clear manner; and that although Plaintiff would have interruptions to his day due to mental health symptoms, he retained the ability to carry out a normal work day and work week given customary breaks and tolerances; and Plaintiff retained the ability to have superficial contact with the general public, supervisors and coworkers; and he retained the ability to work in a routine environment where his goals are clearly set for him. *Id.*

The ALJ gave the 2020 state agency consultants opinions great weight because they had the benefit of reviewing almost all of the evidence, and their opinions were consistent with the record including benign examination findings, the Plaintiff's course of treatment, and his reports to providers. Tr. 1334. The ALJ noted he gave the 2020 state agency opinions "much more" weight than the 2012-2014 state agency opinions, without further explanation. Tr. 1334. As Dr. Harmon and Dr. Gollogly were a nonexamining physician and nonexamining psychologist, the ALJ was required to show that the opinions were supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041. The extent to

which a medical source is "familiar with the other information in [Plaintiff's] case record" is also a relevant factor in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

The ALJ provided no explanation or citation to the record to support his reasoning here, however, and as Plaintiff points out, records show the state agency doctors saw the limited evidence included with Plaintiff's subsequent December 2019 application for benefits, excluding years of treatment and numerous treating and examining provider opinions. ECF No. 13 at 26; *see* Tr. 1439-53. The Court notes that while Dr. Harmon provided an extensive narrative explanation of her findings based upon the records available to her, the ALJ does not discuss her explanation anywhere in the decision, indicate what evidence was reviewed by the 2020 state consultants, or provide any further explanation for the other reasons he gave the 2020 state agency opinions great weight for the entire period at issue. *See* Tr. 1334, 1448-49. This is insufficient, and without further explanation, the ALJ's conclusion that these opinions were entitled to more weight than Dr. Lien's 2016 opinion because the state agency opinions had a more complete record to review and were more consistent with the record as a whole is not supported by substantial evidence.

Finally, the ALJ also noted that "some providers have refused to endorse disability for [Plaintiff], which should be considered to contradict Dr. Lien's opinions." Tr. 1332 (citing e.g., Tr. 1207-09, 2073; *see* Tr. 2028). The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ provided a general statement that "some providers have refused to endorse disability" without analysis, discussion, or even the providers names; review of the record cited by the ALJ here without explanation

reveals a May 2019 consult with Dr. Thapa, a rheumatologist, Tr. 1207, and a January 2021 office visit with a primary care provider, Dr. Atfeh, Tr. 2073. Both providers declined to support Plaintiff's disability claim and explained why. *Id*. However, as the ALJ failed to provide any analysis or reasoning to support this finding, this was not a specific and legitimate reason to give Dr. Lien's opinion less weight. Defendant provides an analysis of Dr. Thapa and Dr. Atfeh's medical records, explaining these providers declined to support disability, and noting Plaintiff declined to follow up with the providers who declined to support disability. ECF No. 15 at 11-12. However, the ALJ did not offer any analysis, and thus the Court will not consider the *post hoc* rationalization. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

Accordingly, the ALJ violated the rule of mandate, as he applied the prior ALJ's reasoning, including reasons previously found insufficient by this Court. The ALJ also failed to provide specific and legitimate new reasons supported by substantial evidence to reject Dr. Lien's 2016 opinion.

### 3. *Dr. Teitelbaum.*

In December 2014, Jacob Teitelbaum, M.D., provided a Healthcare Provider Statement/Functional Abilities Form and a supplemental letter on Plaintiff's behalf. Tr. 687-94. Dr. Teitelbaum indicated Plaintiff's primary diagnoses were Chronic Fatigue Syndrome and Fibromyalgia, and that his limitations included that he could sit for 15 minutes at a time for a total of three hours in an eight-hour workday and stand and walk for less than 15 minutes at a time for a total of one hour in an eight-hour workday and lift up to 10 pounds occasionally. Tr. 687-88. He opined Plaintiff's condition constantly interfered with his attention and concentration and ability to deal with work stress. Tr. 689. He noted his

ORDER GRANTING PLAINTIFF'S MOTION . . . - 25

"assessment of [Plaintiff] included an extensive review of this medical history" and reported Plaintiff symptoms included "widespread muscle pain." Tr. 690. Dr. Teitelbaum opined Plaintiff "is severely disabled and falls into the worse ten percent of patients I have ever seen." *Id*. The ALJ gave Dr. Teitelbaum's opinion minimal weight. Tr. 1332. Because Teitelbaum's opinion was contradicted by the opinions of the state agency consultants, including Dr. Harmon, the ALJ was required to provide specific and legitimate reasons for rejecting it. *Bayliss*, 427 F.3d at 1216

Here, most of the ALJ's reasoning is the same as set forth in the prior ALJ's decision, and again included reasoning rejected by this Court's 2020 Remand Order. *Compare* Tr. 1332, 1393. The ALJ also concluded that "some providers have refused to endorse disability for [Plaintiff], which should be considered to contradict Dr. Teitelbaum's opinions." Tr. 1332 (citing Tr. 1207-09, 2073). As discussed *supra* in relation to Dr. Lien, as the ALJ failed to provide any analysis or reasoning to support this new finding, this was also not a specific and legitimate reason to give Dr. Teitelbaum's opinion less weight.

The ALJ erred in providing reasoning almost wholly the same as the prior ALJ's reasoning, which was previously found insufficient by this Court, and also failed to provide new reasoning supported by substantial evidence to reject Dr. Teitelbaum's opinion. Upon remand the ALJ shall reassess Dr. Teitelbaum's opinion and all other medical opinion evidence with the assistance of medical expert testimony and provide specific and legitimate reasons to discount the opinion or incorporate the limitations into the RFC.

For these reasons the case is remanded to the ALJ. The Court continues an analysis of the other medical opinions Plaintiff challenged, however, as the ALJ will reassess these upon remand, and much of the reasoning used by the ALJ was not supported by substantial evidence.

### 4.    _Dr. Cole and Dr. Mitchell._

On April 29, 2019, Kenneth Cole, Psy.D, conducted a psychological evaluation of Plaintiff on behalf of Washington State DSHS and rendered an opinion of his level of functioning.  Tr. 949-54.  Dr. Cole diagnosed Plaintiff with a generalized anxiety disorder, and a somatic symptom disorder, persistent and moderate.  Tr. 951.  Dr. Cole opined Plaintiff had numerous moderate and marked limitations, and that he had severe limitation in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms.  Tr. 952.  Dr. Cole opined Plaintiff would be so limited 6 to 12 months, that vocational training would partially minimize or eliminate barriers to employment, and Plaintiff "would benefit from referral to [vocational rehabilitation] and [his] deficits are likely to improve with appropriate psychopharmacological interventions and mental health counselling."  _Id_.  Dr. Cole also opined Plaintiff "needs to engage in therapy on a weekly basis for 6 to 12 months focusing on strategies for coping with anxiety."  _Id_.

On April 30, 2019 Dr. Mitchell reviewed Dr. Cole's evaluation, Tr. 956, and on May 7, 2019, Dr. Mitchell and completed a Disability/Incapacity Determination and Evaluate Functional Limitations form on behalf of DSHS, indicating it was a new decision.  Tr. 957.  Dr. Mitchell also opined Plaintiff had moderate, marked and severe limitations due to diagnoses of generalized anxiety disorder and somatic symptom disorder; she opined and that he had severe limitation in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and also in his ability to maintain appropriate behavior in a work setting.  Tr. 958-59.  She opined the diagnosis were supported by objective medical evidence from Dr. Cole's evaluation, that the severity and

functional limitations were supported by medical evidence, and she noted Dr. Cole's "narrative supports the functional limitations." Tr. 959. She opined that an onset date of March 1, 2019 was supported by objective medical evidence, and that a "duration of at least 18 months appears appropriate for chronic mental health impairments, poor prognosis for gainful employment and likely need for long-term resources." Tr. 959-60. The ALJ gave the opinions of Dr. Cole and Dr. Mitchell limited weight. Tr. 1334. Because the opinions of Dr. Cole and Dr. Mitchell were contradicted by the state agency psychologists, the ALJ was required to provide specific and legitimate reasons to reject the opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ gave the opinions limited weight because the opinions "are check-box forms with little meaningful explanation." Tr. 1334. An ALJ "need not accept the opinion of any physician . . . if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228. However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.")

Here, as Plaintiff points out, Dr. Cole, upon whom Dr. Mitchell relied, performed a full psychological exam, including psychological testing, and did not merely check boxes. ECF No. 13 at 18-19; *see* Tr. 949-54, 959. Dr. Cole's psychological testing included a personality assessment, and Dr. Cole explained that results of this testing showed "certain indicators fell outside of the normal range, suggesting that [Plaintiff] may not have answered in a completely forthright manner" and "the nature of his responses might lead one to form a somewhat inaccurate impression of him based upon the style of responding"; but he also

noted that there was "no evidence to suggest [Plaintiff] was motivated to portray himself in a more negative or pathological light than the clinical picture would warrant." Tr. 953. Dr. Cole explained testing showed Plaintiff "sees his life as severely disrupted by a variety of physical problems. These problems have left him unhappy, with little energy or enthusiasm for concentrating on important life tasks . . . he [also] reported a number of difficulties consistent with a significant depressive experience. *Id*. Dr. Cole also noted Plaintiff demonstrated an "unusual degree of concern about physical functioning and had health matters and probable impairment arising from somatic symptoms" and that "he reported particular problems with the frequent occurrence of various minor physical symptoms . . . and had vague complaints of ill health and fatigue"; and that "[h]e is likely to be continuously concerned with his health status and physical problems . . . his self-image may be largely influenced by a belief that he is handicapped by his poor health." *Id*.

Dr. Cole performed a full clinical interview, mental status exam and other psychological testing, and explained his findings in a narrative. Tr. 949-54. Dr. Mitchell performed a review of Dr. Cole's report and opinion on behalf of DSHS, and also provided some narrative explanation of her opinion. Tr. 959. The ALJ's conclusion that these opinions were due limited weight because the opinions "are check-box forms with little meaningful explanation" was not a specific and legitimate reason to reject these opinions.

Next, the ALJ found that Plaintiff saw Dr. Cole for the "stated purpose of getting on disability and thus the secondary-gain motivation he has displayed in the record undermines his statements to this source." Tr. 1334. The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester*, 81 F.3d at 832 (citing *Ratto v. Sec'y, Dept. of Health and Human Servs.*, 839 F. Supp. 1415, 1426 (D. Or. 1993)). Here, Dr. Cole also noted "there was no

ORDER GRANTING PLAINTIFF'S MOTION . . . - 29

evidence to suggest [Plaintiff] was motivated to portray himself in a more negative or pathological light than the clinical picture would warrant" at the DSHS examination. Tr. 953. While the ALJ reasonably found some secondary gain motivation in other records, as discussed *supra*, this was not a specific and legitimate reason to discount Dr. Cole and Dr. Mitchell's psychological opinions.

The ALJ also found the opinions of Dr. Cole and Dr. Mitchell inconsistent with Plaintiff's report of average mood along with Dr. Cole's own benign mental status exam. Tr. 1334 (citing Tr. 949-54). An ALJ "need not accept the opinion of any physician . . . if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228. Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, the ALJ explained that Dr. Cole's own mental status exam showed Plaintiff's good grooming, cooperative and relaxed behavior, appropriate eye contact, normal thought process, normal memory, and normal concentration except for some difficulty with arithmetic. Tr. 1334 (citing Tr. 949-54).

Plaintiff contends Plaintiff's PAI testing profile indicated "significant elevations and his life was severely disrupted by physical problems, made errors on serial 7s, could not spell "world" backwards, made an error and needed assistance to complete Trail B, and had poor insight [sic]." ECF No. 13 at 20-21. While Plaintiff made some errors in serial sevens and could not spell "world" backwards, Dr. Cole explained that he also performed additional memory scale testing, which placed Plaintiff within the average range for memory, intellectual functioning tests fell within the average range, Trail testing on Part A was completed with "zero errors," and while Plaintiff required assistance to complete Trail B testing, his results were still within normal limits. Tr. 954. While Plaintiff offers an alternate interpretation of the test results, to the extent the evidence could be interpreted

differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ reasonably found the opinions of Dr. Cole and Dr. Mitchell inconsistent with Plaintiff's reports and Dr. Cole's own benign mental status exam. This was a specific and legitimate reason, supported by substantial evidence to give the opinions limited weight.

The ALJ also found these opinions were inconsistent with Plaintiff's previous work history, examination findings, treatment records, and reports to providers including his statements he had a stable mood and/or no depression/anxiety, with no further explanation. Tr. 1334 (citing Tr. 1762, 1857, 1962, 1964). The ALJ's findings include reasoning that has previously been found insufficient by this Court. As the case is being remanded to reassess all medical opinion evidence, upon remand the ALJ will ensure that all reasons are legally sufficient.

The ALJ also found that Dr. Cole stated the duration of Plaintiff's limitations was between 6-12 months and warranted a referral to state vocational rehabilitation "further limiting their probative value to this decision" and that Dr. Mitchell "misinterpreted . . . duration as 18 months . . . further indicating the minimal attention to detail with which she repeated Dr. Cole's assessment." Tr. 1334. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. §§ 404.1505(a), 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months). Here, Dr. Cole opined Plaintiff's limitations were expected to last up to twelve months, and this satisfies the duration requirement. *Id*.

Additionally, Plaintiff points out that Dr. Mitchell indicated she disagreed with Dr. Cole's finding of up to 12 months duration, explaining "duration of at

least 18 months appears appropriate."  ECF No. 13 at 20; *see* Tr. 959.  This was therefore not a specific and legitimate reason to give the opinions limited weight.

As the case is being remanded for reconsideration of all medical opinion evidence, the ALJ shall also reassess the opinions of Dr. Cole and Dr. Mitchell, providing specific and legitimate reasons to discount the opinions or incorporating the limitations into the RFC.

### 5.   *Dr. Byrd.*

On August 2, 2021, James Byrd, M.D., completed a Medical Report form and rendered an opinion of Plaintiff's level of functioning.  Tr. 1992-93.  Dr. Byrd reported Plaintiff's diagnoses were fibromyalgia, chronic fatigue, and obstructive sleep apnea.  Tr. 1992.  He opined Plaintiff needed to lie down during the day due to sleepiness and fatigue "most of the day per his report."  *Id*.  He indicated work on a regular and continuous basis would cause Plaintiff's condition to deteriorate and he would likely miss four or more days per month due to pain and fatigue; Dr. Byrd opined such limitations had existed since at least January 1, 2010.  Tr. 1993. The ALJ gave Dr. Byrd's opinion little weight.

Plaintiff contends the ALJ erred in dismissing his opinion as an opinion Plaintiff was disabled, which is an issue reserved for the Commissioner; and in finding his opinion speculative and cursory as he did not meet Plaintiff since 2020, because he reviewed his records and discussed his findings; and in failing to explain his findings that Dr. Byrd's exams were cursory and unremarkable, as this Court has already found that Plaintiff's conditions do not present with extensive objective findings"; and that the ALJ erred in finding Dr. Byrd's opinion "did not match" the DDS medical consultants, as a nonexamining source's opinion cannot by itself constitute substantial evidence to justify rejection of a treating physician. ECF No. 13 at 22.  Defendant contends the ALJ reasonably found Dr. Byrd's opinion speculative because he did not begin treating Plaintiff until 2020 and

1
2
3
4
5

acknowledged his opinion Plaintiff could not work since 2010 and had to lie down most of the day was based on Plaintiff's self-report, his opinion stood at odds with Dr. Byrd's own exams, which were unremarkable, and he reasonably found his opinions were inconsistent with the state agency opinions and the opinions of other providers who refused to endorse disability.  ECF No. 15 at 14-15.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

First, the ALJ gave Dr. Byrd's opinion little weight because it was provided on a checkbox form with little meaningful explanation.  Tr. 1335.  As discussed above in relation to the opinions of Dr. Cole and Dr. Mitchell, an ALJ "need not accept the opinion of any physician . . . if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228.  However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected.  *See Garrison,* 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill,* 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.").  Without further analysis, the ALJ's conclusion that these opinions were due limited weight because the opinions "are check-box forms with little meaningful explanation" was not a specific and legitimate reason to reject these opinions.  As this case is being remanded for the ALJ to reassess the medical opinion evidence, the ALJ will revisit the use of this reasoning, and if utilized, the ALJ will ensure it is supported by substantial evidence.

24
25
26
27
28

Next, the ALJ found Dr. Byrd's opinion regarding absenteeism and need to lie down was "really nothing more than an opinion that [Plaintiff] cannot work at times, which is an issue reserved to the Commissioner."  Tr. 1335.  A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance."  20 C.F.R. §§ 404.1527(d), 416.927(d); *see also*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 33

*McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinion about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan v. Massanari,* 246 F.3d 1195, 1202-03 (9th Cir. 2011) ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion.").

Here, Plaintiff contends Dr. Byrd's opinion was presented in terms of functional limitations. ECF No. 13 at 21 (citing 20 C.F.R. 404.1513(a)). Defendant failed to defend the ALJ's reasoning. ECF No. 15 at 13-15. The Court agrees Dr. Byrd provided functional limitations, and the ALJ's rejection of the opinion because it was "nothing more than an opinion [Plaintiff] could not work . . . which is an issue reserved to the Commissioner" was not a specific and legitimate reason to reject the opinion.

Next, the ALJ found Dr. Byrd's opinion "is particularly cursory and speculative in that he endorses limitations since 2010 despite never meeting [Plaintiff] until 2020." Tr. 1335. Plaintiff contends Dr. Byrd reviewed Plaintiff's records and prior evidence of fibromyalgia, and as of the date of his opinion thought Plaintiff was disabled by the severity of his condition. ECF No. 13 at 21. Defendant contends the ALJ reasonably characterized found a 10-year retroactive assessment as speculative. ECF No. 15 at 13-14. The Court agrees.

"[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. Here, the ALJ noted Dr. Byrd had not

met Plaintiff until 2020, and on his opinion form he indicated the conditions existed since at least 2010 without any comment or explanation.  Tr. 1335. Records support the ALJ's findings, as well.  For example, at his first visit Dr. Byrd noted Plaintiff's report he had fibromyalgia since he was 15, [but] had "never really been on any therapy for that but unable to work since 2010."  *See* Tr. 2024. The ALJ reasonably found the opinion cursory and speculative in that Dr. Byrd endorsed limitations since 2010 despite meeting Plaintiff in 2020, and this was a specific and legitimate reason, supported by substantial evidence to give the opinion little weight.

The ALJ gave other reasons to discount Dr. Byrd's opinion, including some found insufficient for reasons discussed *supra*.  As the case is being remanded for reconsideration of all medical opinion evidence, the ALJ shall also reassess Dr. Byrd's opinion, providing specific and legitimate reasons to discount the opinion or incorporating Dr. Byrd's limitations into the RFC.

### 6.   *Dr. Coffin, N.D.*

In March 2019, Connor Coffin, a naturopath, completed a Medical Report form on behalf of Plaintiff and rendered an opinion on his level of functioning. Tr. 944-45.  Dr. Coffin reported Plaintiff's diagnoses were fibromyalgia, chronic fatigue syndrome and stomach pain.  Tr. 944.  He opined work on a regular and continuous basis would cause Plaintiff's condition to deteriorate and that due to his impairments Plaintiff would miss four or more workdays a month, explaining "he cannot keep up with an active schedule.  It is a struggle to complete activities of daily living."  Tr. 945.  He indicated such limitations have existed since January 2010, explaining Plaintiff "stopped working in 2009."  He further opined Plaintiff continues to search for answers to his condition.  Depression present because of imitations."  *Id*.  The ALJ gave the naturopath's opinion minimal weight.  Tr.

1332.  Because Dr. Coffin was a naturopath, the ALJ was required to give germane reasons to discount his opinion.  *Ghanim*, 763 F.3d at 1161.

The ALJ gave the naturopath's opinion minimal weight for reasons including that it was on a checkbox form with little objective evidence to support the degree of limitations opined; and that Dr. Coffin's opinion was "really nothing more than an opinion that [Plaintiff] cannot work at times, which is an issue reserved to the Commissioner."  Tr. 1332.  This ALJ erred in regard to this rationale as discussed *supra* in relation to other medical opinions.  Similarly, without further analysis or explanation, these are not germane reasons to reject the opinion of the Naturopath.  As the case is being remanded for reconsideration of the medical opinion evidence, the ALJ shall also reassess Dr. Coffin's opinion, providing germane reasons to discount the opinion or incorporating the limitations into the RFC.

## 7.   *Dr. Genthe.*

In February 2021, Thomas Genthe, Ph.D., performed a Psychological - Psychiatric eval on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning.  Tr. 2030-37.  Dr. Genthe diagnosed Plaintiff with major depressive disorder, unspecified.  Tr. 2032.  He opined Plaintiff had marked limitation in his ability to understand, remember and persist in tasks by following detailed instructions, in his ability to adapt to changes in a routine work setting, to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and to complete a normal workday and workweek without interruption from psychologically based symptoms.  Tr. 2033.  Dr. Genthe opined Plaintiff was overall markedly limited and would be so limited for 12 months with treatment, and that vocational training or services would minimize or eliminate barriers to employment.  Tr. 2034.

The ALJ gave Dr Genthe's opinion little weight for many of the reasons discussed above, such as that it was on a checkbox form and performed in a secondary gain context.  Tr. 1335.  The ALJ's errors in regard to this rationale are discussed *supra* in relation to the opinions of Dr. Cole and Dr. Mitchell.  Similarly, these were also not specific and legitimate reasons to reject the opinion of Dr. Genthe.

As the case is being remanded for reconsideration of the medical opinion evidence, the ALJ shall also reassess Dr. Genthe's opinion, providing specific and legitimate reasons supported by substantial evidence to discount the opinion or incorporating the limitations into the RFC.

**8.** ***Dr. Peterson.***

In May 2020, Rod H. Peterson, M.D., completed a Mental Source Statement on behalf of Plaintiff and rendered an opinion on his level off functioning.[5] Tr. 1176-79.  Dr. Peterson opined Plaintiff had moderate limits in his ability to perform activities within a schedule, maintain regular attendance and be punctual without customary tolerances; and otherwise mild to no significant limits in his

---

[5] Plaintiff also had a consultative examination with Norman Peterson, M.D., a psychiatrist in July 2013. Tr. 574-77.  The 2013 examining physician noted untreated depression, noted Plaintiff would benefit from psychotherapy including medication and that "eventually he will require vocational rehabilitation . . . He would then be able to enter the workforce in the distant future" but noted a guarded prognosis as Plaintiff had "no plans to deal with depression and lack of training for employment."  Tr. 576.  The ALJ gave the 2013 psychiatrist's opinion minimal weight, as well. Plaintiff does not challenge or discuss the ALJ's analysis of this opinion, and Defendant does not address it.  The ALJ will reconsider all medical opinions on remand.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 37

ability to sustain mental activities over a normal workday and workweek.  Tr. 1176-78.  He opined due to Plaintiff was likely to be off task due to his impairments 12-20% of a workweek, and if he attempted to work full time he would likely miss three days of work per month, and that he had been so limited since at least December 4, 2019.  Tr. 1778.  The ALJ gave Dr. Peterson's opinion little weight.  Tr. 1335.

Plaintiff contends the ALJ gave the same incorrect reasons to discount the opinion as discussed for the other providers, *supra*, and that Dr. Peterson's opinion is in fact consistent with his treatment notes.  ECF No. 13 at 25.  Defendant contends the ALJ reasonably gave Plaintiff's treating mental health provider and the state agency opinions greater weight than Dr. Peterson's opinion because Dr. Peterson did not provide any explanation for his limitations, the limitations are not supported by the record including mental status findings, and Dr. Peterson appeared to have assessed limitations related to Plaintiff's physical symptoms rather than mental health symptoms.  ECF No. 15 at 17-18.

As the case is being remanded to reconsider all medical opinion evidence, the ALJ shall also reconsider the opinion of Rod Peterson M.D., providing specific and legitimate reasons supported by substantial evidence to discount the opinion or incorporating the limitations into the RFC.

**9.**    ***Other Sources.***

Plaintiff also challenges the ALJ's reasoning giving significant or great weight to the state agency opinions, examining providers from Plaintiff's older case, along with the more recent opinion of Plaintiff's therapist, Ms. Able, a provider the ALJ referred to as "Dr. Able."  ECF No. 27; *see* Tr. 1335.  As discussed *supra*, review of the ALJ's findings shows much of the ALJ's analysis of the older opinions was taken directly from the prior ALJ opinion and/or includes reasoning already found insufficient by this Court, in violation of this Court's 2020

remand order.  For the reasons discussed *supra*, upon remand the ALJ shall reassess all medical opinion evidence.  The ALJ shall ensure the reasons given to reject any opinions are supported by substantial evidence or that the limitations are included in the RFC.

## VII.    CONCLUSION

Plaintiff urges this Court to remand for an immediate award of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).

Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, however, the Court will not remand for immediate payment of

benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the Court finds further proceedings are necessary to resolve conflicts in the record, including conflicting medical opinions, as well as to further develop the record by taking testimony from a medical and psychological expert. The Court acknowledges this is the third remand for this claim but after conducting an exhaustive review of a complicated record, declines to remand for benefits. As such, the case is remanded for further proceedings consistent with this Order. Nothing herein should be read as a suggestion that any particular decision or decisions on remand would be more appropriate than another.

On remand, the ALJ shall reevaluate the medical evidence of record with the assistance of medical and psychological expert testimony. The ALJ shall reanalyze all medical opinion evidence, taking care to explain all findings and to avoid reasoning already rejected by this Court. The ALJ is to make new findings on each of the five steps of the sequential evaluation process, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.     Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3.     The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.     An application for attorney fees may be filed by separate motion.

5.     The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 29, 2023.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 41